**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ROBERT HOSSFELD, individually and on behalf of others similarly situated, Plaintiff, | ) ) ) ) | Case No. 1:19-cv-3492 |
| | ) | District Judge Seeger |
| v. | ) | Magistrate Judge Schenkier |
| | ) | |
| ALLSTATE INSURANCE COMPANY, | ) | **CLASS ACTION** |
| ALL WEB LEADS, LLC, DATALOT, INC. | ) | |
| and LOGAN BAILEY, | ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) | |

**CLASS ACTION**
**AMENDED COMPLAINT**

1.      Plaintiff Robert Hossfeld ("Hossfeld" or "Plaintiff") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage over the proliferation of intrusive, nuisance telemarketing practices.  *See Mims v. Arrow Fin. Servs.*, *LLC*, 132 S. Ct. 740, 745 (2012).

2.      Plaintiff received an unsolicited, autodialed, prerecorded-voice call the afternoon of March 4, 2019, asking if he was interested in auto insurance, or bundling with homeowner's or renter's insurance. Plaintiff indicated that he was interested; the only way for the recipient of such a call to figure out who the caller of a phone call like this is. The caller – which is affiliated with a person named Logan Bailey – sold or shared the information Plaintiff provided to defendants Datalot and All Web Leads, as well as other "lead generation" companies.

3.      Calling consumers in order to develop marketing leads is impermissible under the TCPA. This rule was solidified in 2013 to require <u>written</u> consent, including clear and conspicuous disclosures, as well as a signature. Defendants know about the written consent requirement, but develop marketing leads through non-written and verbal means, anyway.

4.     And although the TCPA expressly permits signatures to be obtained electronically consistent with laws such as E-Sign, 47 C.F.R. § 64.1200(f)(8), E-Sign requires special disclosures to be made, and consent to be conferred, *before* a signature or contract is valid. Absent those disclosures and consent, a signature obtained electronically is null.

5.     As the Consumer Financial Protection Bureau explained this in an amicus brief submitted in 2018 to the Seventh Circuit in another consumer protection case,

> [E-Sign] provides: "if a statute, regulation, or other rule of law requires that information relating to a transaction or transactions in or affecting interstate or foreign commerce be provided or made available to a consumer in writing, the use of an electronic record to provide or make available (whichever is required) such information satisfies the requirement that such information be in writing if" various conditions are met.

> Those conditions include the consumer's "affirmative[] consent[] to such use"; the provision to the consumer of a "clear and conspicuous statement" informing her of her right to withdraw consent and to receive the disclosure "on paper or in nonelectronic form"; and a disclosure of the "hardware and software requirements for access to and retention of the electronic records," along with the consumer's electronic consent (or confirmation of consent) "in a manner that reasonably demonstrates that the consumer can access information in the electronic form." Id. § 7001(c).

*Lavallee v. Med-1 Solutions, LLC*, 17-3255, Dkt. 19 at pp. 4-6 (April 25, 2018) (brief of amicus curiae); 15 U.S.C. § 7001(c).

6.     Neither Datalot, Inc. ("Datalot") nor All Web Leads, LLC ("AWL") tries to comply with E-Sign in their dealings with consumers, and Allstate does not have a policy requiring them to comply with E-Sign, either.

7.     Although Datalot and All Web Leads knew they did not have written consent, they sold the lead to Allstate Insurance Company ("Allstate") and other insurance companies. Allstate agent(s) purchased the lead from Datalot, All Web Leads and possibly other lead generators, and then issued multiple quotes for insurance to Plaintiff, which quotes arose directly from the telemarketing at issue.

2

8.     Datalot, AWL and Allstate claim that Plaintiff went on websites and asked to be called. However, even if Plaintiff had opted in on the websites as defendants contend, this would not represent valid "prior express written consent" under the TCPA, because neither the signature nor any of the disclosures were valid under E-Sign.

9.     In sum, neither Allstate, Datalot, All Web Leads nor Logan Bailey had "prior express written consent" to call Plaintiff or anyone else whose lead was developed using similar methods.

10.     Each of the actors here are sophisticated entities that knew at all material times that written consent was required for telemarketing calls such as the ones at issue here, and knew that that they did not have – and could not get – any meaningful evidence of such consent.

11.     Given that these calls and violations are widespread, and that Allstate has been sued multiple times for this same violation, a class action is the best means of obtaining redress for the Defendant's illegal telemarketing, and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**Parties**

12.     Plaintiff Robert Hossfeld is a natural person and a citizen of the State of Texas. At all relevant times, Plaintiff was the subscriber for the cellular telephone at issue.

13.     Defendant Allstate Insurance Company is a Delaware corporation headquartered in Northbrook, Illinois, in this District.

14.     Defendant Datalot is a Brooklyn, New York corporation that does business in this district. It knowingly and intentionally sold the leads at issue in this case to Allstate exclusive agents, which it knew would use the information to issue quotes for Northbrook-based Allstate

3

insurance. Datalot developed the leads at issue for the purpose of issuing Allstate quotes for insurance and selling its goods and services.

15.     Defendant All Web Leads ("AWL") is a corporation based in Austin, Texas that does business in this District. It knowingly and intentionally sold the leads at issue in this case to Allstate exclusive agents, which it knew would use the information to issue quotes for Northbrook-based Allstate insurance. AWL developed the leads at issue for the purpose of issuing Allstate quotes for insurance and selling its goods and services.

## Jurisdiction & Venue

16.     This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff's claims arise under federal law.

17.     Additionally, the Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. 1332(d)(2).  The matter in controversy exceeds $5,000,000 in the aggregate, exclusive of interest and costs, as each member of the proposed Class of at least tens of thousands is entitled to up to $1,500 in statutory damages for each call that has violated the TCPA.  Further, Plaintiff alleges a nationwide class, which will result in at least one Class member residing in a state different from Defendants.

18.     Venue is proper under 28 U.S.C. § 1391(b)(1) and (2) because Defendant Allstate has its headquarters in this District, and because AWL and Datalot developed the leads at issue for the purpose of selling them to help develop Allstate business. The calls and leads that are the subject of this case were made and developed for the purpose of assisting Northbrook-based Allstate in gaining more customers. A substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District, including Allstate's ratification of the wrongful conduct described herein and issuance of the quotes that were the subject of the telemarketing.

4

## **Facts**

19.     On about March 4, 2019, Plaintiff received a telemarketing call on his cell phone from (254) 604-1507. The call used a spoofed caller ID, in order to trick Plaintiff into answering a call he might not have otherwise answered.

20.     The call featured a prerecorded voice and was placed using an automatic telephone dialing system. This call was made by defendant Logan Bailey or a company owned by or affiliated with him.

21.     The prerecorded voice said that it was calling to offer auto insurance, as well as homeowner's, renter's, or health insurance, for sale. The prerecorded voice did not ask Plaintiff if he wished to opt out of future calls or provide any mechanism to do so.

22.     The prerecorded voice said it was from "insuranceratesforless.com" but that company claims it had nothing to do with any call to Plaintiff.

23.     During the call, Plaintiff verbally indicated that he was interested in receiving quotes for insurance, and said that insurance companies could call him, in order to try to figure out who was behind this call. Plaintiff gave the caller incorrect identifying information, including the pseudonym Michael Johnson, in case the call was fraudulent, so as not to place himself in peril of potential identity theft.

24.     Logan Bailey through affiliates, shell companies and other persons then appended the information gathered in the original call with other consumer data, and sold the lead to defendants AWL and Datalot. Upon information and belief, this was done by placing the information obtained during the original call into Datalot and AWL web forms.

25.     AWL and Datalot know that they need "prior express written consent" to call cellular telephones using automated equipment and/or a prerecorded voice, and knew that they did

not have such. Despite that they knew that they did not have evidence of written consent, AWL and Datalot both began calling Plaintiff's cell phone in order to further develop the marketing lead.

26.     On March 4-6, Plaintiff received a flurry of telemarketing calls from Datalot, AWL and Allstate agents, offering Allstate insurance, as well as direct e-mailed quotes for Allstate renter's, auto, and life insurance.

27.     Some or all of these calls, too, made by Datalot and AWL were made using an automatic telephone dialing system. Plaintiff recognized the use of an ATDS during these calls because for several of the calls there was a long pause, during which Plaintiff said "hello" several times. Then there was a prerecorded or artificial beep played, and a person came onto the line.

28.     Allstate, too, called and texted Plaintiff directly to follow up on these leads. Alternatively, some of these calls were made by Allstate agents who were authorized by Allstate to give the outward impression that they were Allstate.

29.     During one of the Allstate-made calls with Plaintiff on or about March 6, 2019, the representative informed Plaintiff that the calls were made by a computer, not the representative.

30.     Datalot called Plaintiff's cell phone on March 5, 2019, and transferred the call to an exclusive Allstate agent who tried to sell Plaintiff Allstate insurance products. Soon after or during this call, and as a direct result therefrom, Defendant Allstate provided Plaintiff a quote for renter's insurance by email, which linked directly to an Allstate website with an "allstate.com" domain. The quote included an upsell "add-on" option for term life insurance. This lead came from Datalot.

31.     Also on this March 5, 2019 call, Plaintiff informed Allstate's representative that he would only agree to be contacted by email, and that he did not want any additional contact by telephone.

32.     Although all defendants have the infrastructure to almost instantaneously cease calling people who ask for calls to stop, Allstate and Datalot continued to cause multiple autodialed calls to be made to Plaintiff's cell phone number thereafter.

33.     AWL called Plaintiff on March 5, 2019, which was transferred to an Allstate agent for the purpose of quoting Allstate goods and services.

34.     Plaintiff originally filed this case on March 19, 2019, but non-suited and refiled on May 24, 2019.

35.     Remarkably, AWL has continued to peddle the bogus lead associated with Plaintiff's cell number, and Allstate has participated in such and accepted the ill-gotten benefits of the telemarketing complained of here.

36.     On about April 23, 2019, Plaintiff received three calls to his cell phone that were made for purposes of selling Allstate goods and services. Plaintiff did not answer these calls, so the caller sent him a text message that said,

> This is Cheyenne with Allstate we just had a rate decrease in your area, I am finishing up an updated quote real quick do you still live at 78018 HOUSTON ST ? Text "STOP" to opt out

Upon information and belief, this text message originated with Allstate itself.

37.     Then *again* on about May 27, 2019, plaintiff received another Allstate call on his cell phone, this one made by another lead generator that purchased the lead from AWL. This lead was then sold to an Allstate agent that called Plaintiff multiple times using what it called an "autodialer."

38.     This second round of calls to Plaintiff's cell phone appear to arise from a second coming of the lead, where a lead generator again purported to obtain "written consent" through verbal means.

39.     It is difficult for a consumer like Plaintiff to keep track of all incoming telemarketing calls, much less to figure out who made them. Plaintiff thus alleges that he has received additional calls to his cell phone by or on behalf of Allstate, including through Datalot and/or AWL.

40.     No defendant had "prior express written consent" for any of these calls.

## Allstate's Liability for the Calls at Issue

41.     Allstate should be held liable for the calls it made, and for calls others made in order to sell its goods and services.

42.     Allstate authorizes its agents to use telemarketing to sell its products and services, and in some cases, Allstate reimburses agents' use of telemarketers and lead generators.

43.     Allstate knew the origin of the potential new business when it issued the quotes for insurance it sent to Plaintiff.

44.     Alternatively, Allstate reasonably should have known the origin of the potential new business when it issued the quotes, but elected not to investigate such and instead enjoy the telemarketing's benefits.

45.     Allstate ratified the illegal telemarketing calls and campaign by attempting to access his credit report and issuing multiple quotations for insurance. Allstate has sent multiple follow-up emails to Plaintiff, too; each such email furthers Allstate's ratification of the sales tactics at issue here. Moreover, each time Plaintiff receives another call promoting Allstate goods and services, this too constitutes evidence of ratification.

46.     Through its contracts, as well as by other means, Allstate maintains interim control over its agents' actions, both as to lead generation, telemarketing, and other activities. Moreover, Allstate, at all times, has the absolute ability to control its agents' use and method of telemarketing.

8

47.     In issuing quotes to prospective customers derived therefrom, Allstate ratifies such telemarketing campaigns. Allstate knows that some of the insurance quotations that it issues are generated through autodialed and/or prerecorded calls, but it continues to issue quotes for insurance despite this.

48.     Allstate had absolute control over whether, and under what circumstances, they issue an insurance quote to a prospective customer, but has consciously chosen to continue to accept business gained through illegal telemarketing.

49.     Allstate had the ability to control its agents' use of Allstate knowingly and actively accepted business that originated through the illegal telemarketing calls complained of herein.

50.     Allstate authorizes its insurance agents – including the agents involved in the calls to Plaintiff – to use its name during telemarketing calls, and when it issues quotes for insurance like the ones it issued to Plaintiff, it makes sure to include its trademark logo "Good Hands" so that the consumer knows the quote came from Allstate.

51.     Allstate protects its "Good Hands" logo, and regularly sends out cease and desist letters to third parties that improperly use the logo, but affirmatively authorized the use of the "Good Hands" in the quotations for insurance issued to Plaintiff and others.

52.     Likewise, Allstate and its agents have not instituted sufficient procedures for maintaining do-not-call lists. Upon information and belief, Allstate and its agents do not, as a practice, share Do Not Call information amongst themselves and/or their vendors, and do not adequately train their personnel in the existence or use of such. This results in repeated calls to consumers like Plaintiff who have asked to not be called by or for Defendant. Additionally, there are many calls—as Plaintiff himself experienced—where Allstate's vendor uses a fictitious name or does not otherwise provide accurate identification information.

53.    Allstate has been sued for this type of TCPA violation before, but it has never repudiated the business it gained through illegal telemarketing, and Plaintiff is not aware of Allstate ever having disciplined any agent or telemarketer for engaging in conduct such as described herein. Money damages *plus* an injunction against future violations are the only way to wrench Allstate to comply with the TCPA.

### Class Action Allegations

54.    As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of himself and a Class consisting of:

> All persons in the United States: (i) to whom a call or text was made for the purpose of encouraging the purchase of Allstate goods or services, (ii) to a cellular telephone number, (iii) using a prerecorded voice or the same or similar telephone dialing systems as was used in the calls to Plaintiff, (iv) where the lead was purchased through Datalot or AWL for purposes of promoting sale of Allstate goods or services, (v) where any one of the following was not satisfied before the call:
>
> > (1)    affirmative consent by the consumer to use electronic signatures and to receive electronic disclosures,
> > (2)    disclosures regarding how to maintain electronic copies of documents;
> > (3)    disclosures regarding how to obtain paper copies of electronic documents,
> > (3)    an explanation as to how to withdraw consent to receive electronic disclosures.
>
> Plaintiff alleges a subclass of leads that originated with Logan Bailey or any of his websites, affiliates or cohorts, such as FWD Marketing, Covey Leads, www.lowerinsurancerates.com (or other websites affiliated with Bailey) or similar.

55.    Upon information and belief, the cellular telephone numbers of more than 100 persons were called for the purpose of encouraging the purchase of Allstate insurance in the four years prior to the filing of this action, using a prerecorded voice or the same or similar telephone dialing system used in the Allstate calls to Plaintiff.

56.     Common questions of law or fact exist as to all members of the Class, and predominate over any questions solely affecting any individual member, including Plaintiff. Such questions common to the Class include but are not limited to:

a.      Whether the calls at issue used an "automatic telephone dialing system" or an "artificial or prerecorded voice" as such terms are defined or understood under the TCPA and applicable FCC regulations and orders;

b.      Whether the calls complied with the TCPA's prerecorded voice requirements, including 47 C.F.R. § 64.1200(b).

c.      Whether Allstate had "prior express written consent" to contact Plaintiff and the other members of the Class when causing calls to be made to such persons' cell phones using an automatic telephone dialing system or an artificial or prerecorded voice, pursuant to 47 C.F.R. § 64.1200(f)(8);

d.      Whether Allstate should be liable for sales calls made by third parties; and

e.      Damages, including whether Defendant's violations were performed willfully or knowingly such that Plaintiff and the other members of the Class are entitled to trebled damages under 47 U.S.C. § 227(b)(3).

57.     The class and subclass are so numerous that joinder is impracticable. Defendants use automated calls in order to make a large number of calls in a short amount of time to develop business for Allstate, and the class is defined so as to hinge upon Defendants' bulk, liability-creating actions and omissions.

58.     Plaintiff's claims are typical of the claims of the other members of the Class. The factual and legal bases of Defendant's liability to Plaintiff and the other members of the Class are the same: Defendants violated the TCPA by causing the cellular telephone number of each member

of the Class, including Plaintiff, to be called using an automatic telephone dialing system and/or an artificial or prerecorded voice, without the requisite permission.

59.     Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has no interests that might conflict with the interests of the Class. Plaintiff is interested in pursuing these claims vigorously, and has retained counsel competent and experienced in class and complex litigation, including with regards to the claims alleged herein.

60.     Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual action would entail. There are, on information and belief, thousands of members of the Class, such that joinder of all members is impracticable.

61.     No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

62.     Defendants have acted and failed to act on grounds generally applicable to Plaintiff and the other members of the Class, thereby making relief appropriate with respect to the Class as a whole. Prosecution of separate actions by individual members of the Class, should they even realize that their rights have been violated, would likely create the risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct.

63.     The identity of the Class is, on information and belief, readily identifiable from Defendant's and its vendors' records.

12

<u>**COUNT I**</u>
**Violations of the TCPA, 47 U.S.C. § 227**
**(Autodialed and/or Artificial or Prerecorded Voice Call Violations)**

64.     Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

65.     It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system … to any telephone number assigned to a … cellular telephone service …." 47 U.S.C. § 227(b)(1)(A)(iii).

66.     Defendants initiated or caused to be initiated calls to the cellular telephone numbers of Plaintiff and the other members of the class defined above using an automatic telephone dialing system or an artificial or prerecorded voice.

67.     These calls were made without regard to whether or not Defendants had previously obtained express consent or permission from the called party to make such calls. In fact, Defendants did not have prior express consent to call the cell phones of Plaintiff and the other members of the class when the calls were made.

68.     The prerecorded message calls Plaintiff and others received that were connected to Allstate did not properly permit opt-out of future calls, pursuant to 47 C.F.R. § 64.1200(b).

69.     Defendant's calls and violations were negligent. Alternatively, they were willful or knowing.

70.     Defendants violated the TCPA by making non-emergency calls to the cell phones of Plaintiff and others using an automatic telephone dialing system or an artificial or prerecorded voice without prior express consent.

71.     On information and belief, some of the calls to Plaintiff and the class were made by vendors of Defendants. Defendants are liable for those calls, too.

72.     As a result of Defendants' conduct and pursuant to Section 227(b)(3) of the TCPA, Plaintiff and the other members of the class were harmed and are each entitled to a minimum of $500 in damages for each violation. Plaintiff and the class are also entitled to an injunction against future calls. 47 U.S.C. § 227(b)(3).

73.     Because Defendants knew or should have known that Plaintiff and the other members of the class had not given prior express consent to receive its automated calls to their cell phones—and/or willfully caused such calls to be made to the cell phones of Plaintiff and the other members of the class without prior express consent—the Court should treble the amount of statutory damages available to Plaintiff and the other members of the class, pursuant to Section 227(b)(3) of the TCPA.

WHEREFORE, Plaintiff, individually and on behalf of the Class, requests that the Court enter judgment against Defendants for:

A.     Certification of the class as alleged herein;

B.     A declaration that Defendants violated the TCPA as to Plaintiff and the class;

C.     An injunction to prevent further violations;

D.     Damages pursuant to 47 U.S.C. § 227(b)(3), as applicable;

E.     Costs, expenses, and attorneys' fees, to the extent permitted by law; and

F.     Such other or further relief as the Court deems just and proper.

14

## COUNT II
### Violations of the TCPA, 47 U.S.C. § 227
### (Internal Do-Not-Call Violations)

74.     Plaintiff re-alleges and incorporates all foregoing allegations.

75.     The Internal Do-Not-Call provisions of the TCPA require any party that is engaged in telemarketing – including "sellers" who do not make calls themselves – to maintain and honor a written internal do-not-call policy.

76.     The TCPA's protections on this point are strong, and reflect the FCC's mandate of informed consumer choice: The Internal Do-Not-Call provisions prohibit any telemarketing at all, unless the seller adheres to the provisions of 47 C.F.R. § 64.1200(d).

77.     Allstate, Datalot and AWL violated 47 C.F.R. § 64.1200(d), by not having sufficient internal DNC policies and/or by not following or honoring the policies that they did have.

78.     For example, but not by limitation, Allstate's DNC policy does not properly require telemarketing vendors to disclose that calls are being made on behalf of Allstate. 47 C.F.R. § 64.1200(d)(4).

79.     Additionally, but not by limitation, Allstate has not instituted a sufficient policy to integrate do not call requests made to lead generators that make calls on its behalf, into its own Internal Do-Not-Call list and vice-versa.

80.     Moreover, no Defendant's policy calls for sharing do not call requests to other vendors, which is likely why Plaintiff has continued to receive telemarketing calls even after having filed this lawsuit.

81.     As a result of Allstate's Internal Do-Not-Call violations, Plaintiff and the class were damaged. For example, they received unsolicited telemarketing calls that invaded their privacy, including, as in Plaintiff's case, within a 12-month period after a do-not-call request.

WHEREFORE, Plaintiff Robert Hossfeld, individually and on behalf of the Class, respectfully requests that the Court enter judgment against Defendants for:

A.     Certification of the class as alleged herein;

B.     A declaration that Defendants violated the TCPA as to Plaintiff and the class;

C.     An injunction to prevent further violations;

D.     Damages pursuant to 47 U.S.C. § 227(c)(5), as applicable;

E.     Costs, expenses, and attorneys' fees, to the extent permitted by law; and

F.     Such other or further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial as to all claims of the complaint so triable.


Dated: December 26, 2019                          Respectfully submitted,

                                                  ROBERT HOSSFELD, individually and on
                                                  behalf of others similarly situated,

                                                  By:   /s/ Alexander H. Burke

Alexander H. Burke
Email: aburke@burkelawllc.com
Daniel J. Marovitch
Email: dmarovitch@burkelawllc.com
BURKE LAW OFFICES, LLC
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
Telephone:  (312) 729-5288

Scott D. Owens (pending *pro hac vice* admission)
Email: scott@scottdowens.com
SCOTT D. OWENS, P.A.

3800 S. Ocean Dr., Suite 235
Hollywood, FL 33019
Telephone: (954) 589-0588

*Counsel for Plaintiff and Putative Class*